The judgment of the court was pronounced by
Rost, J.
The plaintiff has enjoined the sale of certain slaves seized in execution as the property of Abraham, A. Green, on the ground that on the 20th March, 1845, those slaves had already been sold under execution as the properly of Green, and purchased by L. N. Baldwin, who sold and delivered them to the plaintiff on the 30th September of that year.
The answer is that the titles under which the plaintiff pretends to claim are simulated; that the slaves have ever remained in the possession of Green, and were still his property at the time of the seizure in this case. The district judge maintained this defence; and dissolved the injunction, with ten per cent interest and twenty per cent damages on the amount enjoined. The plaintiff has appealed.
The view taken by the district judge is fully sustained by the evidence. The judicial sale by which Baldwin, acquired the slaves was avowedly simulated. 'Whatever was paid under that sale was paid by Green, and the slaves remained, as they were before, under his exclusive control. In September, 1846, he wrote to Baldwin that he had concluded to sell the slaves to Maxwell, the plaintiff, instead of his mother, and directed him to give the said Maxwell a title for and in consideration" of the sum of eight hundred and fifty dollars. He goes on to say, that on account of his embarrassments he is not in a condition to retain such property, and will do so no longer. “I inform you of this, judge,” says the letter, “trusting to your discretion, deeming it due to you, and requesting it kept to yourself.”
Agreeably to these instructions, Baldivin made a paper title of the slaves to Maxwell for $850, but no money was ever paid to him, nor is the possession of the slaves satisfactorily shown to have changed after this sale ; on the contrary, the very last acts of possession shown in relation to them were done by Green and his agent, Oliver.
An attempt has been made to prove that the price was to have gone in part payment of a sum of money due Maxwell by a commercial firm, of which Green *703 was a partner; and the witness, Baldwin, has testified under a release, that in May, 1848, nearly three years after the sale, he advised Maxwell to record his title, and told him at the same time that he ought to credit the firm of Green, Mc-Dougal Co. for the sum of $1000, instead of $850 stipulated in the deed of sale ; and that Maxwell promised to do so.
This evidence shows conclusively that there was no price agreed upon, and that the sale was not a serious contract. The credit which Maxwell agreed to give was never given; and when, subsequently, the firm of Green, McDougal Sf Co. failed, Maxwell was placed on the schedule as a creditor for the whole amount stated to be due him, without reference to the slaves conveyed to him by Baldwin.
We are satified that the plaintiff has no title which can arrest the seizure of the defendants.
We are not prepared to say that the court erred in deciding that, under the 12th section of the act of 1846, this case was entitled to be tried by preference. The executions enjoined were issued in commercial cases, and the preference given to that class of cases to be effectual must be extended to the actions arising from them.
Under the authority of the case of Millet v. Henry, 2d Ann. 146, and Dwight v. Richard, 4th Ann. 240, the plaintiff is entitled to relief, as to the allowance of interest at the rate of ten per cent. The judgment enjoined bears five per cent interest, and only three per cent more should have been allowed. We cannot say that the judge did not exercise a sound discretion in assessing the damages as he did.
It is therefore ordered, adjudged and decreed, that the judgment of the court below be amended, so as to reduce the interest allowed on the dissolution of the injunction to three per cent. It is further ordered and decreed, that the judgment as amended be affirmed; the plaintiff paying the costs of the district court; those of the appeal to be paid by the defendants and appellees.